UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| PATRICK A. BURROWS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff;<br><br>v.<br><br>PURCHASING POWER, LLC, a foreign limited liability corporation,<br><br>Defendant. | CASE NO: 1:12-CV-22800-UNGARO /<br>TORRES |

### FINAL JUDGMENT CERTIFYING SETTLEMENT CLASS, APPROVING SETTLEMENT, AWARDING INCENTIVE FEES TO CLASS REPRESENTATIVE, AND AWARDING ATTORNEYS' FEES AND EXPENSES TO CLASS COUNSEL

This matter came before the Court on the parties' Joint Motion for Final Order Certifying the Settlement Class, Approving the Settlement Agreement and granting Plaintiff's Motion for An Award of Attorneys' Fees and Expenses and Incentive Award to Class Representative and Memorandum of Points in Support Thereof. The "Settling Parties" consist of Class Representative, Patrick Burrows ("Plaintiff" or "Class Representative") and Defendant, Purchasing Power, LLC ("Defendant").

On April 5, 2013, Plaintiffs filed their Motion for Preliminary Approval asking the Court to approve a proposed Settlement Agreement and Release ("Settlement Agreement"). On April 12, 2013, the Court preliminarily certified the Settlement Class and approved the Settlement Agreement. The parties now seek final certification of the Settlement Class and final approval of the Settlement Agreement. The Class Representative also seeks approval of an incentive award to the Class Representative and attorneys' fees and costs for Class Counsel, which Settling Defendant has agreed not to object up to the amount requested in the application. A Final Fairness hearing was held on all

of these issues on October 4, 2013 ("Fairness Hearing").

The Court has considered evidence including: (i) all motions, memoranda and papers filed in support of the Settlement Agreement; (ii) the declarations of Class Representatives, Class Counsel, Mediator Rodney Max and (iii) arguments of counsel for Plaintiff and counsel for Defendant.

For the reasons set forth below, the Court continues and makes final its certification of the Settlement Class, approves the Settlement Agreement; approves an incentive award to Class Representative in the amount of $3,500.00; and approves attorney's fees and costs to Plaintiffs' counsel in the amount of $200,000.00. Being otherwise fully advised in the premises, the Court orders and adjudges as follows:

## I.   HISTORY OF THE LITIGATION

This case stems from a class action complaint that Plaintiff filed against Defendant, wherein Plaintiff alleged that Defendant lost certain highly confidential information of Plaintiff and class members in violation of their important privacy rights.

After over a year of adversarial litigation and mediation, Plaintiff reached a settlement with Defendant that is the subject of this Order.

## II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.   CERTIFICATION OF THE SETTLEMENT CLASS

1. "A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (quoting *Woodward v. NOR-AM Chem. Co.*, 1996 WL 1063670 *14 (S.D. Ala. 1996)); *see also Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006). Whether a class is certified for settlement or for trial, the Court must find that the prerequisites for class certification under Rule 23(a) and (b) of the Federal Rules of Civil Procedure are met. *Lipuma*, 406 F. Supp. 2d at 1314. The Court hereby makes final its prior certification of the following Settlement Class in this action:

28128699.1

> All persons throughout the United States who were employees of Winn-Dixie and who had their personal identifying information transferred by Winn-Dixie to Purchasing Power on or about December 28, 2009, who are listed on the Winn-Dixie eligibility file known as elig_win_20091226.txt. and Amazon_Winn-Dixie_Name_and_Address_List_-_version_2.xlsx.
>
> Defendant is excluded from the Class as well as any entity in which the Defendant has a controlling interest, along with Defendant's legal representatives, officers, directors, assignees and successors. Also excluded from the Class is any judge to whom this action is assigned, together with any relative of such judge and the spouse of any such persons.

The reasons for this Court's order follow below.

2. Rule 23(a) of the Federal Rules of Civil Procedure has the following requirements for class certification: "(l) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). Courts often refer to these factors as numerosity, commonality, typicality, and adequacy. *See, e.g., Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 966 (11th Cir. 2008).

### 1. Numerosity

3. The numerosity requirement under Rule 23(a)(1) requires "that the class is so numerous that joinder is impracticable, not impossible." *Lipuma*, 406 F. Supp. 2d at 1314 (citing *Kreuzfeld, A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991)); *see also Armstead v. Pingree*, 629 F.Supp. 273, 279 (M.D. Fla. 1986) (explaining that the focus of the numerosity inquiry is not whether the number of proposed class members are "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical."). There is no definite standard as to the size of a given class. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). As explained in *Evans v. US. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983), a plaintiff need not show the precise number of members of the class to substantiate numerosity: "[W]hile there is no fixed numerosity rule, 'generally less than 21 is inadequate, more than 40 is adequate, with numbers

between varying according to other factors.'" *Id* (quoting *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1552 (11th Cir. 1986), *cert. denied*, 479 U.S. 883 (1986)).

4. The Court finds that the Settlement Class is estimated to include more than 43,565 individuals. Declaration of Wheeler. Under any standard, the Court concludes that the numerosity requirement set forth in Rule 23(a)(l) is met in this case.

### 2. Commonality

5. The commonality inquiry requires that plaintiffs' claims raise "at least one" question of law or fact common to the members of the class. *Fabricant*, 202 F.R.D. at 313. Commonality will be satisfied where questions of law refer to standardized conduct by the defendants. *In re Amerifirst Sec. Litig.* 139 F.R.D. 423, 428 (S.D. Fla. 1991). Establishing commonality does not require complete identity of the plaintiffs' claims. *CV Reiz, Inc., v. Levy,* 144 F.R.D. 690, 696 (S.D. Fla. 1992). "[I]t is not necessary that all questions of fact or law be common, but only that some questions are common..." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004), *cert. denied*, 543 U.S. 1081 (2005).

6. In this case, the Court finds that the Settlement Class members are commonly united because, at a minimum, Plaintiff has alleged common violations of their privacy rights and have claimed violation of the Florida unfair Deceptive Trade Protection Act. In the case presented, the Court notes that all members of the Settlement Class are entitled to the protection of their important privacy rights, and share a common legal remedy: substantive injunctive relief and damages. Therefore, the Court concludes that there is legal and factual cohesiveness among Settlement Class members to satisfy the commonality requirement of Rule 23(a)(2).

### 3. Typicality

7. The typicality inquiry under Rule 23 (a)(3) requires the Court to determine that the claims of the class representative is "typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "Typicality requires a nexus between the class representative's claims or defenses and the common questions of fact or law which unite." *Fabricant*, 202 F.R.D. at 313 (citing *Kornberg v. Carnival Cruise Lines*, 741 F. 2d 1332, 1337 (11th Cir. 1984)). Typicality, however, does not

28128699.1

mean that class representative's claims must be identical to the claims of class members. Rather, typicality is satisfied where the interests of the named parties arise from the same course of conduct that give rise to the claims of the class they seek to represent and are based on the same legal or remedial theory. *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *Brinkerhoff v. Rockwell Int'l Corp.*, 83 F.R.D. 479, 480 (N.D. Tex. 1979) (typicality requires "that the claims or defenses of the class 'resemble' or 'exhibit the essential characteristics' of those of the representatives"). A plaintiff's claims are typical of the class "if they stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory." *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996).

8. In this case, the Court finds that Class Representative's claims are typical of the Settlement Class members. Class Representative and Settlement Class members share a common interest in the privacy of the information which was compromised. The crux of the allegations in this case is that Defendant sustained a security breach and the highly confidential information of Plaintiff and class members was breached. The Court notes that the injunctive relief remedies sought by Class Representative would apply to the Settlement Class members equally. Moreover, class members will be entitled to seek to recover damages under a matrix which addresses the type of injury whch they may have sustained. Thus, Class Representative's interest in protecting the privacy of Settlement Class members' personal information is typical of the claims of the Settlement Class members.

### 4. Adequacy of Representation.

9. Rule 23 also requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). What constitutes adequacy is a question of fact that depends upon the circumstances of each case and is entrusted to the discretion of the trial court. *Kirkpatrick v. J C. Bradford & Co.* 827 F.2d 718, 727 (11th Cir. 1987); *see also,* 7A CHARLES A. WRIGHT, ARTHUR R. MILLER AND MOSEY K. KANE, FED. PRACTICE & PROCEDURE § 1765, at 271 (1986). Rule 23(a)(4)'s adequacy requirement has two components: (1) the class

28128699.1

representatives have interests in common; and (2) class counsel are qualified, experienced, and generally able to conduct the litigation. *Kirkpatrick*, 827 F.2d at 726; *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985); *Fabricant*, 202 F.R.D. at 314. The Supreme Court has held that a district court must determine that class representatives and class counsel are free from conflicts of interest with absent class members. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). The Court finds that the record well supports the adequacy requirements in this case.

### a. Class Representatives are Adequate

10. Looking first to the Class Representative, the Court finds that Patrick Burrows has dutifully fulfilled his obligations. The Class Representative actively participated in this case for the benefit of the Settlement Class. *See* Burrows Decl. The undisputed evidence demonstrates that Mr. Burrows has shown his commitment to the claims he shares with the Settlement Class. The Class Representative had significant involvement in all facets of the litigation, including the mediation negotiations that led to the proposed settlement. *Id.*

11. As to the Settlement Agreement, the Court finds that the Class Representative understood the privacy issues at issue and was motivated to protect the privacy of the Settlement Class members and himself, through the proposed injunctive and monetary relief. The Court also notes that the Class Representative appreciated the terms, nature, and scope of the Settlement. *See* Yanchunis Decl. Mr. Burrows has sworn that the Settlement Agreement is a benefit to the Settlement Class as it provides important privacy protection. *Id.* He further testified that his motivation in participating and undertaking this case was to change the behavior of Defendant, to seek damages for the class, and to protect the privacy interests of the Settlement Class.

12. Thus, the Court finds that the Class Representative is not being treated differently than the Settlement Class members. Although the Class Representative seeks an incentive award, the incentive award is not to compensate the Class Representatives for damages but to reward him for his efforts on behalf of the Settlement Class. The Court finds it significant that the incentive awards were negotiated only after the terms of the settlement were reached among the Settling Parties. *See* Max Decl.; Yanchunis Decl.

### b. Class Counsel are Adequate

13. The Court now turns to Class Counsel's adequacy. The Class Counsel attorneys have extensive experience in complex litigation and class actions. *See* Declarations of Class Counsel. The Court has observed them exhibit extensive knowledge of the law applicable to the Settlement Class members' claims. The Court finds that Class Counsel has expended substantial effort to achieve the results proposed in the Settlement Agreement. The quality of the legal work, has been excellent.

14. The Court notes that the record reflects Class Counsel's commitment to this case and the Settlement Class. Class Counsel engaged in extensive pre-suit investigation and informal discovery practice. Yanchunis Decl.; Fuller Decl. The Court has presided over document discovery and finds that Class Counsel reviewed a significant volume of documents produced during the litigation. The Court understands that Class Counsel prepared for and took the depositions of two corporate representatives of Defendant and propounded requests for production and interrogatories. The Court also observed throughout the litigation, including the extensive motion practice, that Class Counsel have a true expertise in privacy issues. *See* Yanchunis Decl.

15. The Court reviewed the declaration of the mediator and finds that during the mediation, Class Counsel participated in a face-to-face meeting and phone conferences with Defendant. The mediator affirmed that the topics of incentive awards for the Class Representative and attorneys' fees for Class Counsel were not raised until after all of the material settlement terms were negotiated and reduced to a signed term sheet. *See* Max Decl. These facts are undisputed by any contrary evidence. As such, the Court concludes that Class Counsel are adequate.

### c. Class Certification under Rule 23(b)(3) is Appropriate

16. In addition to the requirements of Rule 23(a), a proposed class action must satisfy one of the subsections of Rule 23(b). In this case, certification was and is proper for purposes of settlement under Rule 23(b)(3). Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

28128699.1

17. Pursuant to the aforementioned standards, the Court determines that certification of a Settlement Class under Rule 23(b)(3) was and is appropriate in this case. The Court finds that common questions of fact and law predominate over questions of fact and law affecting only individual members of the Class. A Class Settlement will ensure that funds are available to compensate injured Class Members. Rule 23(b)(3) also requires that the class action device be superior to other methods of adjudication. Factors the Court may consider are: (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class. Any difficulties of management of the Class need not be considered in this settlement context. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Sullivan v. DB Invs., Inc.*, 667 F.3D 273,302-303 (3d Cir. 2011) ( holding that potential variances in different states' laws would not defeat certification of a settlement-only class because trial management concerns were not implicated by a settlement-only class ,as opposed to a litigated class). A class action settlement is superior to other means of resolution because a settlement affording Class Members an opportunity to receive compensation benefits all parties.

**B.    THE SETTLEMENT AGREEMENT**

18. Under Rule 23(e), the Court will approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Factors to consider in determining whether a settlement is fair, reasonable, and adequate include: "(1)the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In considering whether the proposed settlement should be approved as fair, reasonable, and adequate, the Court considered these factors as well as the absence of any collusion and the judgment of

experienced counsel for the parties. *Id; Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005).

19. Beginning with the likelihood of success at trial, the Court finds that Plaintiff's likelihood of success is not certain in this case aside from the challenges to class certification, the issues of causation and damages were tremendous challenges. Absent settlement, an expensive and time consuming trial on the merits is the only way that these issues can be resolved. Thus, the Court concludes that because success at trial is not certain for Plaintiff, this factor weighs in favor of accepting the settlement.

20. "The second and third considerations of the *Bennett* test are easily combined." *Behrens*, 118 F.R.D. at 541. In terms of the range of possible recovery, the Florida Unfair and Deceptive Trade Practice Act provides for actual damages, and the settlement provides a mechanism, with limits, for class members to obtain monetary relief. Accordingly, the Court finds the proposed settlement is within the range of possible recovery.

21. As stated in the third *Bennett* factor, even a settlement point below the range of possible recovery may qualify as fair, adequate, and reasonable. *Bennett*, 737 F.2d at 986. In this case, the Court finds that the Settlement Agreement's injunctive relief requires Defendant to implement business changes with respect to its use of protected information.

22. As to the fourth Bennett factor, the Court finds the complexity, expense, and duration of this litigation favors approval of the proposed settlement. As the record itself supports, this is a complex case and there are significant risks of continuing the litigation. Plaintiff has advanced a novel claim with little jurisprudence. Continued litigation could potentially have resulted in failure for the Plaintiff and Class.

23. The Court also acknowledges that all of the issues that have been litigated in this case have consumed time, money, and judicial resources. If the case were to continue, the Court believes that the Settling Parties would engage in continued motion practice, including the important issue of class certification, and appellate practice. Trial would have been long, complicated, expensive, and fraught with risk. Accordingly, even if Plaintiff was ultimately to prevail, the Settlement Class

would only benefit after years of trial and appellate proceedings and the expenditure of significant expense by both sides. Moreover, the benefit obtained might not be any different than the important and significant relief being provided to Settlement Class members through this settlement. Thus, the Court finds that the Settlement Agreement provides the Settlement Class with certainty of result and a high level of assurance regarding the protection of their private information. *See Lipuma*, 406 F. Supp. 2d at 1324 (approving settlement that would "'alleviate the need for judicial exploration of these complex subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing.") (citation omitted). Therefore, the Court concludes that the fourth *Bennett* factor weighs in favor of the settlement's approval.

24. As to the fifth *Bennett* factor, the Court finds that the substance and amount of opposition to the settlement weighs in favor of the settlement's approval. No members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition.

25. As to the sixth *Bennett* factor, the Court finds that the advanced stage of the litigation favors approval. The Settling Parties have engaged in substantial discovery and contentious motion practice including Defendant's motion for summary judgment. The Settling Parties and the Court are well positioned and well-briefed to assess the strengths and weaknesses of this case and the benefits of the proposed settlement.

26. Importantly, the Court finds that there is no evidence of collusion. The Settling Parties negotiated the resolution of this case at arm's length. During that time, the Settling Parties submitted to mediation before Rodney Max. Mr. Max "never witnessed or sensed any collusiveness between the parties. To the contrary, at each point during these negotiations, the settlement process was conducted at arm's-length and, while professionally conducted, was quite adversarial." Max Dec.

27. Further the Court is personally aware of the professionalism and integrity of the Settling Parties' attorneys. Class Counsel have provided sworn declarations that an agreement was reached only after considering such factors as: (1) the benefits to Plaintiff and the Settlement Class; (2) the strength of Plaintiff's case weighed against the settlement offer; (3) the attendant risks and

28128699.1

uncertainty of litigation; (4) the attendant risks and uncertainty of establishing liability and damages; (5) Defendant's vigorous defense of the litigation and continued denial of the claims and; (6) the desirability of consummating this Settlement Agreement promptly to safeguard the privacy and security of Plaintiff and the Settlement Class members' personal information. Based on all of these factors and the Court's personal observations, the Court concludes that there is no evidence of collusion here.

28. Finally, this Settlement Agreement is supported by seasoned counsel for the Settling Parties. The Court finds that Plaintiff is represented by highly respected attorneys from highly regarded law firms, including attorneys with significant experience in class actions. Similarly, Defendant is represented by leading class action trial lawyers from one of the most respected corporate law firms in the country. The Court finds that the unanimous support of counsel for this settlement weighs in favor of its approval. Based on the foregoing, the Court concludes that the proposed settlement is fair, reasonable, and adequate.

C. **NOTICE**

29. The Court finds that the notice sent to class members satisfies due process. As described in the declaration of the class administrator, Epiq caused the Postcard Notice to be mailed via U.S. Mail to the last known mailing address of each reasonably identifiable class member. Epiq received a data file with the names and addresses of class members from Purchasing Power. It submitted those names and addresses to cross-reference with the National Change of Address database for updated address information. On June 11, 2013, Epiq sent notice to 43,563 class members and on June 12, pursuant to this Court's supplemental order, it sent notice to an additional 451 class members. In total, Epiq mailed 44,014 Postcard Notices. Only 8.2% of the notices were categorized as undeliverable.

30. As of September 16, 2013, Epiq received 15 claim forms. Although the number of claims submitted to-date seems small, the Court is satisfied that class members received adequate notice of the settlement. As of September 16, 2013, Epiq received 1,803 unique visits to the web site created for the settlement. It also received a number of telephone calls about the settlement. As of

28128699.1

September 16, Epiq mailed 550 copies of the claim form to class members and 534 copies of the long form notice to those who requested it. In addition, class members are eligible to make claims for a period of up to a year after the effective date of the settlement.

### D. INCENTIVE AWARDS

31. The Settling Parties have negotiated an incentive award of $3,500 for the Class Representative. The Court finds that such an amount is reasonable and approves the Defendant's payment of an incentive award of $3,500 to the Class Representative. First, as discussed above, the Court finds that the Class Representatives is adequate. Mr. Burrows faithfully fulfilled his fiduciary obligations to the Settlement Class and was not motivated to do so by financial reward. He has been an active participant in all aspects of this time-consuming case and was committed to addressing a problem he believed was important. Moreover, he understood the tensions inherent in the case, the benefits and risks associated with continuing litigation, and the need to protect the rights of Settlement Class members.

32. The Court further finds that the incentive award is not tantamount to a payment for damages; rather the award represents remuneration for the services performed for the benefit of the Settlement Class and reflects the amount of time and effort spent by the Class Representative, the duration of the litigation, and the role to the class in commencing the suit. Finally, the Court notes that the record is clear that the Class Representative negotiated the settlement terms before there was a discussion of an incentive award to the Class Representative and all negotiations were free from fraud or collision. The evidence was established by the impartial mediator, Messr. Max, by the Class Representative, and the attorneys for the Class Representative. The Court finds that the incentive award of $3,500 to the Class Representative for the significant work and responsibility that went into this case is fair and reasonable.

### E. ATTORNEYS FEES AND EXPENSES

33. The Settling Parties agreed in the Settlement Agreement that Class Counsel would seek the Court's approval of an award of attorneys' fees, costs and other expenses of $200,000.00, in the aggregate, to be paid by Defendant. Defendant agreed further to not oppose such amount so long as

28128699.1

the application approved by the Court did not exceed the amount of $200,000.00.

34. The Florida Unfair Deceptive Trade Practices Act is a statute that permits an award of reasonable attorney's fees and other litigation costs reasonably incurred to prevailing plaintiffs. "The court's order on attorney's fees must allow meaningful review-the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988)(citing *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir. 1985)). Even when there is a settlement, as in this case, "the district court has a supervisory role and ultimately must calculate and set the attorneys' fees award up to a maximum of the [negotiated] cap." *Dikeman v. Progressive Exp. Ins. Co.*, 312 Fed. Appx. 168, 172 n.3 (11th Cir. 2008). "A district court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980) (internal citations omitted).

35. Plaintiff's attorneys have submitted affidavits showing the following fees and costs:

| | **TIME** | **HOURLY RATE** | **AMOUNT** |
|---|---|---|---|
| John Yanchunis | 274.00 Hrs. | $650.00 | $178,100.00 |
| Vilma Martinez | 83.70 Hrs. | $425.00 | $ 35,572.50 |
| Allen Fuller | 80.2 Hrs. | $500.00 | $ 40,100.00 |
| Joshua Fuller | 18.5 Hrs. | $325.00 | $ 6,012.50 |
| Morgan & Morgan Complex Litigation Group Costs | | | $ 12,013.77 |
| Fuller & Associates, P.A. Costs | | | $ 409.71 |

36. Having considered the *Johnson* factors and the evidence presented at the fairness hearing, the Court finds that these hours and hourly rates provide a reasonable basis for calculating the lodestar in this case. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). In so finding, the Court notes that this case was novel, that it required significant legal effort and acumen from skilled and experienced counsel, and that counsels' performance in this case has been

excellent in the face of stiff and ardent opposition.

37. Eleventh Circuit precedent has established that "exceptional" results-results that are "out of the ordinary, unusual, or rare"-may result in an enhancement of a fee above the lodestar. *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). "Any enhancement begins with a finding that the results were exceptional." *Id.* at 1306. "Even if the court found the results obtained to be exceptional, no enhancement for these results would be justified unless the court also finds that class counsel's representation was superior to that which would have been expected considering the rates requested." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 899 (1984)). In other words, in order to award attorney's fees in excess of the lodestar, the Court must find that "the quality of their representation far *exceeded what could reasonably be expected for the standard hourly rates* used to calculate the lodestar." *Kenny A. ex rel. Winn v. Perdue*, 547 F.3d 1319, 1324 (11th Cir. 2008) (Wilson, J., concurring) (emphasis in original).

38. According to the declarations of Class Counsel, they incurred $12,423.48 in expenses in litigating this matter. The Court finds that the $12,423.48 in expenses are reasonable, and will be awarded as part of the $200,000.00 awarded to class counsel.

## III. FINAL JUDGMENT AND ORDER

**NOW THEREFORE,** after consideration of all motions, memoranda in support, nine declarations, argument of counsel, and being otherwise duly advised in the premises, it is **ORDERED and ADJUDGED** as follows:

1. Plaintiffs' Motion for Entry of an Order Approving Defendants' Payment of Agreed Upon Incentive Awards to Class Representatives and Attorneys' Fees and Expenses **is GRANTED.** The Court awards $200,000.00 in attorneys' fees and costs, and an incentive award in the amount of $3,500 to Class Representative, Patrick Burrows. Defendant shall pay the award of attorneys' fees and expenses to Class Counsel and incentive awards to Class Representatives in accordance with the terms of the Settlement Agreement.

2. For purposes of this Final Judgment and Order, the Court adopts and incorporates the definitions and meanings of the defined terms set forth in the Parties' Settlement Agreement.

28128699.1

3. Plaintiffs' Motion for Final Certification of Settlement Class, Final Approval of Class Action Settlement, and Entry of Final Judgment and Order **is GRANTED.**

4. The Court expressly approves each and every term contained in the Parties' Settlement. The Court reserves continuing and exclusive jurisdiction over the parties with respect to all matters relating to this Settlement Agreement, including the administration, interpretation, effectuation, and enforcement of the Settlement Agreement and this Final Judgment and Order.

DONE AND ORDERED in Miami, Florida, this _4th_ day of October, 2013.

_____
UNITED STATES DISRICT JUDGE

Copies provided to:
All Counsel of Record

28128699.1